**SO ORDERED.**

**SIGNED this 30 day of October, 2013.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

ARCHWAY HOMES, INC.,   CASE NO. 12–02226–8–SWH
                       CHAPTER 11
    DEBTOR.

## MEMORANDUM OPINION

The debtor, Archway Homes, Inc., moved to modify its confirmed chapter 11 plan pursuant to 11 U.S.C. § 1127(b), and to reinstate the automatic stay under § 362. Creditor First Citizens Bank & Trust Company ("First Citizens") objected to the motion, and a hearing was held in Raleigh, North Carolina, on September 24, 2013. The court entered a brief order denying the motion on September 26, 2013. This memorandum opinion sets forth the bases for the court's ruling.

### BACKGROUND

The debtor filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on March 22, 2012. The debtor's chapter 11 plan of reorganization, filed on July 20, 2012, drew the objections of the bankruptcy administrator, the Internal Revenue Service, First Community Bank, Bank of the Ozarks, and Branch Banking & Trust Company. The debtor was able to resolve

these objections through negotiation, and the debtor's chapter 11 plan, as amended and restated, was confirmed by order entered on October 30, 2012.

The confirmed plan addressed the claim of First Citizens Bank & Trust Company ("First Citizens") in Class Five. The claim, in the amount of $459,763.40, derives from a promissory note in the amount of $450,000, and is secured by liens on two parcels of real property located in Brunswick County (the "collateral"). The confirmed plan stipulated that the debtor would be given until September 30, 2013, to actively market the collateral for sale. In the provision captioned "Treatment," the plan set out the agreed terms governing the debtor's efforts to sell the collateral. The plan further provided that "[i]n the event of a default, or if the Debtor is unable to sell the Collateral to repay First Citizens in full within the Marketing Period, First Citizens - at its sole option - may foreclose on all or part of the Collateral." That stipulation was followed by six sub-points listing the debtor's agreed-upon rights, and certain waivers of those rights, in connection with any foreclosure proceeding. In particular, the debtor's plan articulates and then specifically waives the debtor's rights to notice of hearing and a hearing in connection with a foreclosure by First Citizens upon default under the plan.

The debtor's motion to amend the plan and reinstate the automatic stay, filed on August 12, 2013, was prompted by its inability to sell the property. Prior to formally moving to amend the plan, the debtor approached First Citizens with several unsuccessful requests to modify the plan, including proposals to allow for quarterly payments over and extended period of time or to "allow for the partial surrender to First Citizens of approximately 12 acres of the Collateral in full satisfaction of the First Citizens' claims." Objection of First Citizens at p. 3 ¶¶ 10-11. The debtor also requested

that First Citizens release its lien on one portion of the secured property (the "Caison Creek Lots") in exchange for a payment of $40,000, to which First Citizens did agree.

> The debtor then filed its motion to modify the confirmed plan, asserting that the debtor now believes that the unpaid balance of the Debt is approximately $450,000.00, and the Debtor reasonably believes that the Property is worth at least $2,000,000.00. The Debtor proposes to amend the Plan to transfer part of the Property to First Citizens in satisfaction of the Debt. The Debtor has offered to convey part of the Property to First Citizens in satisfaction of the Debt, but First Citizens has declined an offer and has refused to consider any further partial collateral settlement offers.

Debtor's Motion to Allow Plan Amendment at p. 2 ¶ 4. According to the debtor, if First Citizens were permitted to foreclose on the property as provided in the plan, First Citizens would "likely buy the Property at the sale for a price substantially equal to the amount of the Debt (which is an amount far below the fair market value of the Property), and thereby receive an unfair and unreasonable financial windfall." Id. pp. 2-3 ¶ 5.

In response, First Citizens reiterates that it "declined both of the Debtor's requests to modify the terms of [the] Confirmed Plan, as similar proposals were previously discussed in detail and at length between counsel for the parties and counsel for the parties agreed to resolve First Citizens' claim in the manner outlined in the Confirmed Plan." Objection of First Citizens at p. 3 ¶ 12. In particular, First Citizens objects to the debtor's effort to "modify the Confirmed Plan to transform it into a 'partial dirt for debt' plan," by surrendering approximately 12 of a total 162.19 acres of the secured property in satisfaction of the debt. Id. at p. 7 ¶ 23. First Citizens maintains that all along, it has made it clear that if the debtor was unable to sell the property, First Citizens intended to "pursue its legal and contractual rights against the Collateral," *i.e.*, to foreclose, which it now intends to do. Id. at p.3 ¶ 13.

## DISCUSSION

The circumstances under which a confirmed chapter 11 plan may be modified are governed by § 1127(b), which provides:

> The proponent of a plan or the reorganized debtor may modify such plan *at any time after confirmation of such plan and before substantial consummation of such plan,* but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified under section 1129 of this title.

11 U.S.C. § 1127(b) (emphasis added). Thus, there is a temporal aspect to post-confirmation modification, in that it is permitted only "before substantial consummation." In addition, the plan as modified may be confirmed "only if circumstances warrant such modification." As the court will discuss below, denial of the debtor's motion to modify was premised on both factors. First, the debtor's plan already had been substantially consummated, and second, even if it had not been substantially consummated, the circumstances did not warrant modification.

### Substantial Consummation

Section 1127(b) "creates a window during which the parties and the bankruptcy court may make changes [to] the confirmed plan." In re Olsen, 861 F.2d 188, 190 (8th Cir. 1988). The window is, however, limited. Indeed, "Congress drafted § 1127(b) to safeguard the finality of plan confirmation. [citation omitted] If this were not the case, a proponent of a plan could file an endless series of motions to modify the plan, at every bump in the road, seriously jeopardizing the incentive for creditors to vote in favor of a plan." In re Antiquities of Nev., Inc., 173 B.R. 926, 928 (9th Cir. BAP 1994), citing In re U.S. Repeating Arms Co., 98 B.R. 138, 140 (Bankr. D. Conn. 1989)

(requirements of § 1127 were "established to promote finality and protect a creditor's reliance upon the terms of a plan in accepting it").

Modification may be sought only by the debtor or a proponent of the plan. In re Dean Hardwoods, Inc., 431 B.R. 387, 390-91 (Bankr. E.D.N.C. 2010) (citing In re Charterhouse, Inc., 84 B.R. 147, 151 (Bankr. D. Minn. 1998)). Moreover, the "proponent of the modification has the burden of proving that the plan has not been substantially consummated." Dean Hardwoods, 431 B.R. at 391 (citing In re Bullion Hollow Enters., Inc., 185 B.R. 726, 728 (W.D. Va. 1995)); see also In re Modern Steel Treating Co., 130 B.R. 60, 64 (Bankr. N.D. Ill. 1991).

Modification, then, must *precede* "substantial consummation," which is statutorily defined as follows:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; *and*
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2) (emphasis added). Because § 1101(2) is written in the conjunctive, all three elements must be satisfied in order for a plan to be substantially consummated. Dean Hardwoods, 431 B.R. at 391. In this case, the confirmed plan itself defines substantial consummation, as follows: "'SUBSTANTIAL CONSUMMATION' shall mean the time the reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes." Order Confirming Plan p. 4 ¶ 29. In this case, there is no dispute with regard to transfers or the assumption of transfers, and the issue turns on the third element; *i.e.*, on the extent of distribution under the plan.

5

The debtor has commenced distribution of plan payments to all creditor classes, although with respect to the general unsecured claims, it states that payments have not "formally begun." Debtor's Motion to Allow Plan Amendment at pp. 1-2 ¶ 3(I). Of the nine unsecured claims listed, the debtor states that five have been paid by settlement; the debtor has paid a portion of two others; and two remain unpaid. With regard to the payments, the debtor contends that "all general unsecured creditors who have received any payments under the plan were paid by Thomas Young, not the Debtor. Therefore no payments have been made to general unsecured creditors by the Debtor under the Plan." Debtor's Supplement to Motion to Allow Plan Amendment at p. 1 ¶ 1. Pursuant to this rationale, the debtor concludes that the plan has not been substantially consummated because "payments have not been paid *by the Debtor* to any member of the general unsecured class." Id. at p. 1 ¶ 2 (emphasis added).

The debtor cites to no authority in support of its theory that payments intended to satisfy creditor's claims under the plan do not "count," for distribution purposes, if they are made on the debtor's behalf, rather than directly by the debtor, and the court cannot agree. The debtor has represented to the court that seven of the nine unsecured claims in Class 9 are fully or partially satisfied, such that *the debtor's obligations* to those creditors *under the confirmed plan* are, in full or in part, satisfied. For the debtor to argue that resolution of these claims is not the product of "distribution under the plan" either by the debtor or, evidently, on the debtor's behalf, is disingenuous at best. These payments, which were made on behalf of the debtor, constitute distributions under the plan. See generally In re WM Six Forks, 2013 WL 5354748 *2-5 (Bankr. E.D.N.C. 2013) (specifically addressing "disbursements" within the context of quarterly fees under

28 U.S.C. § 1930(a)(6), but also reviewing numerous cases in which payments on behalf of a debtor are considered disbursements and/or distributions by the debtor).

Thus, the relevant question is whether the plan has been substantially consummated. According to the debtor, "the Plan has not been substantially consummated, since payments have not begun to each member of the general unsecured class." Debtor's Motion to Allow Plan Amendment at p. 2 ¶ 4. The debtor cites no authority for the proposition that payments must have been commenced to each and every member of a general unsecured class in order for substantial consummation to occur, and the court is not aware of any. Instead, the consensus among the courts to consider the question, as was recently articulated in Dean Hardwoods, is that each court

> must determine whether payments to creditors have commenced under the confirmed plan. "There is no percentage or specific number of payments needed to have been paid in order to qualify as 'commenced.'" [citations omitted] Applying the plain meaning approach of statutory interpretation, it seems that commencement should mean not just the beginning of payments to a single creditor, but the commencement of distribution to all or substantially all creditors. This line of reasoning follows the practice of the Eastern District of North Carolina and follows the rationale that substantial means something more than half.

Dean Hardwoods, 431 B.R. at 392.

The facts of the instant case establish that the confirmed plan is, in fact, substantially consummated. As First Citizens summarized:

> Substantially all transfers of real property required under the Confirmed Plan have been made. Further, the Debtor has made payments to or otherwise dealt with all classes of claims included in the Confirmed Plan. In its Motion, the Debtor admits that the claims included within Classes 1, 4, 6, and 7 of the Confirmed Plan have been paid in full. The lease agreement included in Class 8 of the Confirmed Plan has been assumed, and payments have commenced on the Class 2, 3, and 5 claims. Additionally, the Debtor has fully paid five of the nine general unsecured claims included within Class 9 of the Confirmed Plan, and partial payments have been made on two additional unsecured claims in this case. Thus, the Confirmed Plan has been substantially consummated and modification is prohibited. 11 U.S.C. § 1127(b).

Objection of First Citizens at pp. 5-6 ¶ 21.  The court agrees, and would point out that these facts do not present a hard question.  Looked at from another perspective, it would defy common sense if this court were to find that the lack of payment to two of nine unsecured creditors, in the face of all the other steps that the debtor has diligently and appropriately taken towards bringing the plan to completion, precluded a finding of substantial consummation.  Because the confirmed plan has been substantially consummated, the debtor may not modify the plan.

### Circumstances Do Not Warrant Modification

In addition, even if the confirmed plan had not been substantially consummated, the circumstances present in this case do not warrant modification. Modifications pursuant to § 1127(b) may not be made "unless the proponent of the plan can demonstrate that circumstances warrant such modification."  7 Collier on Bankruptcy,  ¶ 1127.03[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  And, while First Citizens consented to the plan as confirmed, its objection to the proposed modification means that the court must "find the plan satisfies § 1129(b) before it may confirm the plan modification."  Dean Hardwoods, 431 B.R. at 393.

Section 1129(b) provides that modification of a confirmed plan may occur if, among other things, "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."  First Citizens asserts that  the debtor's proposed modification is neither fair nor equitable and is, instead, both entirely new (in that it proposes a partial "dirt for debt" plan) and unreasonable, in that the debtor does not even begin to address the many complicated components of such a plan.  Without reiterating the extensive (and accurate) list of those components as set out by First Citizens in its objection, it suffices to say that the debtor has not even begun to establish the precise nature of its proposed new

8

treatment of First Citizens' claim, let alone established that such treatment would satisfy the requirements of § 1129(b). Instead, the only grounds that the debtor *has* clearly articulated as bases for modification are its inability to sell the collateral, and its position that if First Citizens is permitted to foreclose in accordance with the confirmed plan, that foreclosure will result in a windfall to First Citizens. Neither of these positions warrant modification.

With regard to the first point, a debtor's inability to fund or finance the provisions of a confirmed plan does not, in and of itself, justify modification. See, e.g., In re Dam Road Mini Storage, 156 B.R. 270, 271 (Bankr. S.D. Cal. 1993) ("[T]he debtor's inability to refinance or sell the property by the 'drop dead date' in order to pay its creditors is not a reason for modification under § 1127(b)."); Modern Steel, 130 B.R. at 64 (holding that a confirmed plan is a contract, and that "[n]o amount of financial constraint will, in and of itself, relieve the debtor of its obligations"). The debtor points to no new developments or unforseen circumstances that could plausibly be cited as factors warranting a different treatment of the claim. See, e.g., Dean Hardwoods, 431 B.R. at 393-94 (emphasizing that "unforseen changed circumstances in this case justify the modification as to [the creditor bank]"). Again, as noted above, it was specifically understood by both the debtor and First Citizens that the debtor might be unable to sell the property within its allotted marketing period, and for that reason, the confirmed plan expressly provides for that possibility.

On that note, the debtor argues that the plan should be modified because foreclosure would facilitate an "unfair and unreasonable financial windfall" to First Citizens.[1] Once again, the plan sets

---

[1] Part of the debtor's "windfall" argument is premised on the debtor's assertion that First Citizens has in its possession an appraisal of the property, as of April 2012, which values the property in excess of $2,000,000. Whether or not First Citizens had reason to believe the property had such a value shortly after the debtor filed its petition, and six months before the debtor's plan was confirmed, is wholly immaterial to the issues before the court.

out the precise terms agreed to by First Citizens and the debtor; there has been no material change of position or unforseen event that could cast those terms in a fresh and different light; and the debtor has offered absolutely no basis upon which to preclude an outcome that is, while unfortunate, also precisely the outcome to which the debtor agreed.

Accordingly, the debtor's motion to modify the confirmed plan was denied on grounds that the plan already had been substantially consummated, and in addition that modification was not warranted under the circumstances.

**SO ORDERED.**

**END OF DOCUMENT**